IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

REGINALD B.,[1]            )
                          )
      Plaintiff,          )
                          )
vs.                       )    Case No. 3:22-cv-1369-DWD
                          )
COMMISSIONER OF SOCIAL    )
SECURITY,                 )
                          )
      Defendant.          )

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision of Defendant, which denied Plaintiff's application for Disability Insurance Benefits (DIBs). As stated below, the Court **REVERSES** the final agency decision and **REMANDS** the case for consideration of whether Plaintiff qualifies for the older age category.

## I. Procedural History

Plaintiff was born on April 25, 1965. (Doc. 10-2, pg. 21). He protectively applied for DIBs on March 4, 2020. Plaintiff stated a disability onset date of August 18, 2019, and his date of last insured was September 30, 2019. (Doc. 10-2, pg. 14). The alleged disability was related to coronary artery disease, hypertension, diabetes, and hyperlipidemia. (Doc. 10-3, pgs. 28-29). The claim was denied initially and on reconsideration. Plaintiff sought a hearing, which was held on October 15, 2021, before an Administrative Law Judge ("ALJ"). An Unfavorable Decision was issued on November 10, 2021. (Doc. 10-2, pgs. 14-

---

[1]Plaintiff's full name will not be used due to privacy concerns.

23). The Appeals Council denied a request for review, so Plaintiff has exhausted his administrative remedies. Plaintiff also applied for and was awarded Supplemental Security Income (SSI), effective April 24, 2020, upon reaching 55 years-of-age. (Docs. 20, pgs. 3-4; 27, pg. 2 n. 2). That award is not challenged in this case. (Docs. 20, pgs. 3-4; 27, pg. 2 n. 2). The ALJ decision as to DIBs is now final and ripe for judicial review.[2]

## II. Administrative Hearing

An administrative hearing was held on October 15, 2021. (Doc. 10-2, pg. 29). At that time, the ALJ acknowledged that Plaintiff's birthday was April 25, 1965, meaning he was 56 years old at the time. (Doc. 10-2, pg. 44). The ALJ indicated its focus was on the timeframe of August 2019, when Plaintiff alleged an onset of disability, and April 2020, when Plaintiff turned 55 years old and was awarded SSI. (Doc. 10-2, pgs. 42-43, 55).

A vocational expert, Dr. Darrell Taylor, testified at the administrative hearing. (Doc. 10-2, pg. 62). He was questioned about a hypothetical individual, 54 to 55 years-of-age, with 12 years of education and the same past relevant work as Plaintiff. (Doc. 10-2, pg. 64). The hypothetical individual could do light work and frequently climb ramps, stairs, ladders, ropes, and scaffolds. (Doc. 10-2, pg. 64). The hypothetical individual could frequently balance, stoop, kneel, crouch, and crawl. (Doc. 10-2, pg. 64). The hypothetical individual could also frequently reach, handle, finger, and feel with the bilateral upper extremities. (Doc. 10-2, pg. 64). Dr. Taylor opined that the hypothetical individual could not perform the past relevant work at issue. (Doc. 10-2, pg. 64). There were no transferable

---

[2]The Court limits its discussion of the evidentiary record to the information that is relevant to Plaintiff's present arguments and the precise basis for the Court's ruling.

skills, and the hypothetical individual was limited to unskilled work. (Doc. 10-2, pg. 64).

However, there were other jobs, constituting light and unskilled work, that the hypothetical individual could perform. (Doc. 10-2, pgs. 64-65). If the hypothetical individual was absent from those jobs at a rate of three times per month, the jobs could not be maintained in a competitive work environment, such that the absences would "soon result in termination." (Doc. 10-2, pg. 65). Similarly, if the hypothetical individual was off task at a rate of at least 20% of the workday, then he would not be able to maintain competitive employment. (Doc. 10-2, pg. 65). Also, an employer would not tolerate one to two additional breaks during the workday, in addition to what is normally allowed, due to underlying medical impairments. (Doc. 10-2, pg. 66). Finally, Dr. Taylor testified that Plaintiff has no skills that are transferable to the sedentary range. (Doc. 10-2, pg. 65).

### III. General Legal Standards

To qualify for DIBs, a claimant must be disabled. To assess a disability, the ALJ employs a "five-step sequential evaluation process." *See* 20 C.F.R. § 404.1520(a)(1), (2), (4). The ALJ asks whether: (1) the claimant is doing substantial gainful activity; (2) the claimant has a severe medically determinable physical or mental impairment that meets certain duration requirements or a combination of impairments that is severe and meets the duration requirements; (3) the claimant has an impairment that meets or equals an impairment listed in the regulations and satisfies the duration requirements; (4) in view of the RFC and past relevant work, he can perform past relevant work; and (5) in view of the claimant's RFC, age, education, and work experience, he can adjust to other work. *See* 20 C.F.R. § 404.1520(a)(4)-(g); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the claimant is doing substantial gainful activity under step 1, does not have an impairment or combination of impairments as described at step 2, can perform past relevant work under step 4, or can adjust to other work under step 5, then the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i),(ii), (iv), (v). If the claimant has an impairment that meets the requirements of step 3 or is incapable of adjusting to other work under step 5, then he is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (v). The claimant has the burden of proof at steps 1 to 4. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At step 5, however, the burden shifts to Defendant to show that the claimant can adjust to other work existing in "a significant number of jobs…in the national economy." *See Young*, 362 F.3d at 1000; *accord Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

Impairments and related symptoms may cause physical and mental limitations that affect the ability to work. *See* 20 C.F.R. § 404.1545(a)(1). Steps 4 and 5 assess the most a claimant can do at work despite those limitations. *See* 20 C.F.R. § 404.1545(a)(1); *accord* SSR 96-8p, 1996 WL 374184, *2; *Clifford v. Apfel*, 227 F.3d 863, 872-73 n. 7 (7th Cir. 2000). As such, a residual functional capacity ("RFC"), which the ALJ completes after step 3 but before steps 4 and 5, assesses the ability to perform sustained physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, for eight hours a day and five days a week or an equivalent schedule. *See Tenhove v. Colvin*, 97 F. Supp. 2d 557, 568 (E.D. Wisc. 2013); SSR 96-8p, 1996 WL 374184, *2; *accord Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). An RFC must be based on the relevant medical and other evidence contained in the record. *See* 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, *2-3, 5.

In the RFC, the ALJ must identify the claimant's functional limitations and assess

his work-related abilities on a function-by-function basis. *See Tenhove*, 97 F. Supp. 2d at 569; SSR 96-8p, 1996 WL 374184, *1, 3; *accord Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1036 (E.D. Wisc. 2004). The ALJ considers all impairments, including nonsevere impairments, and the claimant's ability to meet physical, mental, sensory, and other requirements of work. *See* 20 C.F.R. § 404.1545(a)(2), (4); *see also Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) ("[T]he ALJ must consider the combined effect of all impairments, 'even those that would not be considered severe in isolation.' "). "An impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). And, while a claimant's statements of pain or other symptoms are considered, they alone are not conclusive evidence of a disability. *See* 20 C.F.R. § 404.1529.

As to physical abilities, the ALJ assesses the nature and extent of physical limitations, then determines the RFC for work activity on a regular and continuing basis. *See* 20 C.F.R. § 404.1545(b). A limited ability to perform physical demands, such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, or crouching may reduce the ability to do "other work" at step 5. *See* 20 C.F.R. § 404.1545(b); *see also* SSR 96-8p, 1996 WL 374184, *5-6. After identifying a claimant's functional limitations and assessing his work abilities on a function-by-function basis, the RFC may be expressed by exertional category, such as "light" or "sedentary." *See Tenhove*, 97 F. Supp. 2d at 569; *accord Lechner*, 321 F. Supp. 2d at 1036; SSR 96-8p, 1996 WL 374184, *3. To do a full range of work in an exertional category, the claimant must be able to perform substantially all the functions at that level. *See* SSR 96-8p, 1996 WL 374184, *5-6.

Further, in the RFC, the ALJ must address medical source opinions. *See* SSR 96-8p, 1996 WL 374184, *7. If the RFC assessment conflicts with a medical source opinion, then the ALJ must explain why the opinion was not adopted. *See id.*; *accord Smith v. Colvin*, 9 F. Supp. 3d 875, 887 (E.D. Wisc. 2014). Medical opinions are considered with the following factors: (1) supportability; (2) consistency; (3) the relationship with the claimant; (4) specialization; and (5) other factors supporting or contradicting the opinion, including evidence showing familiarity with other evidence in the claim or an understanding of disability policies and evidentiary requirements. *See* 20 C.F.R. § 404.1520c(c). The most important factors to the persuasiveness of a medical opinion, however, are supportability and consistency. *See* 20 C.F.R. § 404.1520c(a), (b)(2).[3] The ALJ may, but is not required to, explain how the other factors were considered. *See* 20 C.F.R. § 404.1520c(c)(3)-(5).

### IV. The ALJ's Decision

In view of Plaintiff's alleged onset date of disability and date of last insured, the ALJ found the question was whether Plaintiff was disabled between August 18, 2019, and September 30, 2019. (Doc. 10-2, pgs. 14-15). At step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity. (Doc. 10-2, pg. 16). At step 2, the ALJ found Plaintiff had the following severe impairments through the date of last insured: degenerative changes in the bilateral knees, rhabdomyolysis, diabetes mellitus, diabetic neuropathy, coronary artery disease, and obesity. (Doc. 10-2, pg. 16). Those medically

---

[3]The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions, the more persuasive the medical opinions will be. *See* 20 C.F.R. § 404.1520c(c)(1). The more *consistent* medical opinions are with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinions will be. *See* 20 C.F.R. § 404.1520c(c)(2).

determinable impairments significantly limited Plaintiff's ability to perform basic work activities. (Doc. 10-2, pg. 16). Plaintiff also had hypertension and hyperlipidemia, which were nonsevere. (Doc. 10-2, pgs. 16-17). At step 3, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of impairments listed in the regulations through the date of last insured. (Doc. 10-2, pg. 17).

Before proceeding to step 4, the ALJ assessed Plaintiff's RFC. (Doc. 10-2, pg. 17). The ALJ found Plaintiff could perform light work through the date of last insured. (Doc. 10-2, pg. 17). However, Plaintiff could frequently climb ramps, stairs, ladders, ropes, and scaffolds. (Doc. 10-2, pg. 17). Plaintiff could also frequently balance, stoop, kneel, crouch, and crawl. (Doc. 10-2, pg. 17). Plaintiff could frequently perform reaching, handling, fingering, and feeling with the bilateral upper extremities. (Doc. 10-2, pg. 17). Although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and the other evidence of record. (Doc. 10-2, pg. 19).

The ALJ discussed the treatment notes, medical opinions, and prior administrative medical findings of record. (Doc. 10-2, pgs. 19-20). The prior administrative medical findings of Dr. Vidya Madala were partially persuasive, as they were supported by explanations and were consistent with the medical evidence. (Doc. 10-2, pg. 20). The prior administrative medical findings of Dr. Douglas Chang were unpersuasive, as they were supported by explanations but were not consistent with the medical evidence. (Doc. 10-2, pg. 20). The medical source opinion of Plaintiff's primary care physician, Dr. Khaja

7

Mohsin, was unpersuasive, as it was given after the date of last insured, was unsupported by explanations of the evidence prior to the date of last insured, was unsupported by treatment notes from prior to the date of last insured, and was inconsistent with the medical record as a whole before the timeframe at issue. (Doc. 10-2, pg. 21).

At step 4, the ALJ found Plaintiff was unable to perform past relevant work, which included work in construction and as a mechanic. (Doc. 10-2, pg. 21). Critical to the arguments presented in this case, the ALJ noted, before proceeding to step 5, Plaintiff "was born on April 25, 1965, and was 54 years old, which is defined as an individual closely approaching advanced age, on the date [of] last insured." (Doc. 10-2, pg. 21). The ALJ did not say anything else about the age categories. (Doc. 10-2, pg. 21). Also, it was noted that Plaintiff had at least a high school education and the transferability of job skills was not material to the determination of disability. (Doc. 10-2, pg. 22). The medical-vocational rules "support[ed] a finding that the claimant [wa]s 'not disabled,' whether or not the claimant ha[d] transferable jobs skills." (Doc. 10-2, pg. 22).

At step 5, the ALJ found, in consideration of Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that he could have performed during the relevant timeframe. (Doc. 10-2, pg. 22). If Plaintiff had an RFC to perform the full range of light work through the date of last insured, then the ALJ indicated it would be appropriate to find he was not disabled. (Doc. 10-2, pg. 22). However, the ALJ found Plaintiff's ability to perform all or substantially all of the requirements of light work was impeded by additional limitations. (Doc. 10-2, pg. 22). To determine the extent that those additional limitations eroded the unskilled light

work occupational base, through the date of last insured, the ALJ noted its queries of Dr. Taylor, who indicated the hypothetical individual could perform light unskilled work existing in significant numbers in the national economy. (Doc. 10-2, pg. 22). Based on that testimony, the ALJ concluded Plaintiff was capable of adjusting to other work existing in significant numbers in the national economy at step 5. (Doc. 10-2, pg. 23). Therefore, the ALJ determined it was proper to find Plaintiff was "not disabled." (Doc. 10-2, pg. 23).

## V. Analysis

The Court's review of the ALJ's decision is "extremely limited" and "very deferential." *See* 42 U.S.C. § 405(g); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). Findings of fact, supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g); *accord Clifford*, 227 F.3d at 869. The Court will reverse the ALJ's decision only if the findings of fact were not supported by substantial evidence or the ALJ applied the wrong legal standard. *See Clifford*, 227 F.3d at 869; *accord Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *See Clifford*, 227 F.3d at 869 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Jarnutowski*, 48 F.4th at 773. If reasonable minds could differ about the alleged disability and the ALJ's decision is supported by substantial evidence, then the Court will affirm the ALJ. *See Jarnutowski*, 48 F.4th at 773 (quoting *Elder*, 529 F.3d at 413). The Court reviews the entire record, but does not reweigh the evidence, resolve conflicts, decide credibility, or substitute its judgment for that of the ALJ. *See Clifford*, 227 F.3d at 869; *accord Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, an

ALJ must build a logical bridge between the evidence and the conclusions. *See Jarnutowski*, 48 F.4th at 773 (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)).

Now, Plaintiff raises two issues for review: (1) whether the ALJ erred by failing to consider the older age category, and (2) whether the ALJ erred in its consideration of the medical opinions in the record. The Court finds the first issue is outcome determinative.

Plaintiff argues the ALJ failed to consider the older age category. (Doc. 20, pg. 3). As of his date of last insured, Plaintiff was approximately 54 years and 5 months old. Plaintiff argues he changed age categories on his 55th birthday, *i.e.*, 6 months and 26 days after the date of last insured. (Doc. 20, pg. 4).[4] If the ALJ had limited Plaintiff to sedentary work on or before the date of last insured, rather than to light work, then Plaintiff suggests he would have met the Medical Vocational Guidelines for DIBs at step 5 due to his combination of age, education, work experience, and exertional limitations. (Doc. 20, pg. 4). According to Plaintiff, if a claimant who is "closely approaching advanced age" cannot perform past relevant work and is limited to sedentary work, or if a claimant who is "advanced age" cannot perform past relevant work and is limited to light work, then it is assumed that there may be a serious effect on the claimant's ability to adjust to other work in the national economy at step 5. (Doc. 20, pg. 4).

Plaintiff notes the age categories are not applied "mechanically in a borderline situation." (Doc. 20, pg. 5). Therefore, an ALJ must consider whether to use the older age category, after evaluating all of the factors in the case, if the claimant is within a few days

---

[4]The Court notes that Plaintiff incorrectly states, "Plaintiff changed age categories less than five (5) months later, when he turned fifty-five (55) years of age." (Doc. 20, pg. 4).

or months of reaching the older age category and the use of that category will result in a disability determination. (Doc. 20, pg. 5). Plaintiff states he presents a "borderline situation," meaning he would have qualified for DIBs on or before September 30, 2019, if the ALJ had used the older age category for "a person of advanced age." (Doc. 20, pg. 5). Nevertheless, in contravention of these principles and the directives of Defendant's own Hearing, Appeals, and Litigation Law Manual ("HALLEX"), Plaintiff argues the ALJ did not mention the older age category or explain its decision not to apply that category in this case. (Doc. 20, pgs. 5-6). Absent consideration of the older age category, Plaintiff argues the ALJ's decision is not supported by substantial evidence, requiring a remand.

In response, Defendant admits its HALLEX and Program Operations Manual System "instruct agency adjudicators to explain in their decisions their consideration of borderline age situations." (Doc. 27, pg. 4). However, Defendant notes, to support the ALJ's use of the higher age category, "the evidence must show that the factors have a progressively more adverse impact on the claimant's ability to adjust to other work as the period between the claimant's actual age and attainment of the next higher age category lengthens." (Doc. 27, pg. 4). Also, to challenge the ALJ's omission of a borderline age discussion, Defendant states a claimant must plead harm, *i.e.*, explain why the evidence supports applying the older age category. (Doc. 27, pg. 4). Plaintiff allegedly makes no "attempt to show factors that favored use of the higher age category." (Doc. 27, pg. 6).

Relevantly, § 404.1563(b) of the regulations provides:

When we make a finding about your ability to do other work…we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which

we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 404.1563(b); *see also Cox v. Kijakazi*, No. 21-cv-3075, 2023 WL 5938078, *12 (C.D. Ill. Sept. 11, 2023) ("An ALJ must consider the different age categories when determining a claimant's ability to work," and the test for a "borderline situation" under § 404.1563(b) is whether (1) the claimant's age is within a few days or months of a higher age category and (2) the use of the higher age category would result in a finding of disability); *Teresa G. S. v. Comm'r of Soc. Sec.*, No. 19-cv-583, 2020 WL 230706, *3-4 (S.D. Ill. Jan. 15, 2020) (discussing § 404.1563(b) and the two-part test in the context of Defendant's HALLEX); HALLEX I-2-2-42(C)(5) ("The ALJ will explain in the decision that the ALJ considered the borderline age situation, state whether the ALJ applied the higher age category or the chronological age, and note the specific factor(s) the ALJ considered").

Section 1563(d) of the regulations, which the ALJ found applied to Plaintiff, states: "If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." *See* 24 C.F.R. § 1563(d). Section 1563(e) of the regulations, which Plaintiff argues should have been considered due to the "borderline situation" rule, provides: "We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement

age (age 60 or older)." *See* 24 C.F.R. § 1563(e).

The "borderline situation" rule is considered from the alleged onset date, the date of last insured, or the date of the ALJ's decision. *See Cox*, 2023 WL 5938078, *12 (quoting *Figueroa v. Astrue*, 848 F. Supp. 2d 894, 901-02 (N.D. Ill. 2012)). The Seventh Circuit has not addressed what an ALJ must show when considering the "borderline situation," but district courts in Illinois have held that a remand is required if the ALJ fails to make a statement indicating it considered the proper age category for the claimant or explain its decision. *See id.* at *13 (quoting *Figueroa*, 848 F. Supp. 2d at 899-900); *accord Malgorzata K. v. Kijakazi*, No. 20-cv-296, 2022 WL 2257122, *3 (N.D. Ill. June 23, 2022); *Jackson v. Kijakazi*, No. 20-cv-4466, 2022 WL 226009, *3 (N.D. Ill. Jan. 26, 2022); *see also Teresa G. S.*, 2020 WL 230706, *3-4 (discussing the varying approaches to the "borderline situation" rule). In that instance, it is impossible for a meaningful review of the age category issue. *See Cox*, 2023 WL 5938078, *12 (quoting *Figueroa*, 848 F. Supp. 2d at 899-900; citing *Malgorzata K.*, 2022 WL 2257122, *3; *Moody v. Berryhill*, 245 F. Supp. 3d 1028, 1034-35 (C.D. Ill. Mar. 28, 2017); *Cisero v. Colvin*, No. 14-cv-8419, 2016 WL 3568082, *3 (N.D. Ill. June 24, 2016); *Pelech v. Colvin*, No. 14-cv-7021, 2016 WL 727208, *7 (N.D. Ill. Feb. 22, 2016)). The ALJ has the discretion "to be 'generous or exacting' when considering a borderline age situation." *See Jackson*, 2022 WL 226009, *3, 4 (citing § 404.1563(b); *McKay v. Colvin*, No. 15-cv-9522, 2016 WL 6432582, *5 (N.D. Ill. Oct. 31, 2016); *Figueroa*, 848 F. Supp. 2d at 896). Again, though, the ALJ must consider "borderline situations" and explain its analysis. *See id.*

Further, § 404.1563(b) does not state how many months is "a few months." *See Cox*, 2023 WL 5938078, *12; *see also Flores v. Colvin*, No. 14-cv-518933, 2015 WL 518933, *10 (N.D.

Ind. Feb. 9, 2015) (stating there is no brightline rule for a "borderline situation"). However, the "borderline situation" rule has been applied where the claimant was over 4, 5, or 6 months away from a change of age category. *See, e.g., Cox*, 2023 WL 5938078, *12 (remanding where the claimant was 5 months away from the next age category); *Young v. Barnhart*, 287 F. Supp. 2d 905, 913 (N.D. Ill. 2003) (remanding where the claimant was 4 1/2 months away from the next age category); *Graham v. Massanari*, No. 00-cv-4669, 2001 WL 527326, *3 (N.D. Ill. May 9, 2001) (remanding where the claimant was 4 1/2 months away from the next age category); *Pelech*, 2016 WL 727208, *7 (remanding where the claimant was 6 months and 9 days away from the next age category); *Freundt v. Massanari*, No. 00-cv-4456, 2001 WL 1356146, *19 (N.D. Ill. Nov. 2, 2001) (remanding where the claimant was 6 months and 12 days away from the next age category); *Sopko v. Colvin*, No. 12-cv-6240, 2013 WL 5497276, *11 (N.D. Ill. Oct. 3, 2013) (remanding where the claimant was 6 months and 8 days away from the next age category). Other cases, though, suggest "a few months" should not exceed 6 months. *See Jaimes v. Kijakazi*, No. 20-cv-1372, 2022 WL 504078, *3 (E.D. Wisc. Feb. 18, 2022); *Teresa G.*, 2020 WL 230706, *3.

Here, the Court finds it is proper to remand the case to the agency for consideration of whether Plaintiff qualified for the older age category during the timeframe at issue. In doing so, the Court notes Defendant does not contend the ALJ actually did or was not required to consider the older age category. Indeed, Defendant admits its HALLEX "instruct[s] agency adjudicators to explain in their decisions their consideration of borderline age situations." *See* HALLEX I-2-2-42(C)(5); (Doc. 27, pg. 4). Defendant also outlines the ALJ's approach to the issue and the factors considered in

14

"borderline situations." *See* HALLEX II-5-3-2, I-2-2-42(C)(3); (Doc. 27, pg. 4). Rather than argue the ALJ was not required to engage in the analysis, though, Defendant suggests that Plaintiff inadequately alleged harm from the ALJ's omission. (Doc. 27, pgs. 4-5).

The Court finds Defendant's argument unpersuasive for two reasons. First, the agency's guidance documents and the legal authorities discussed herein indicate the ALJ should have noted any "borderline situation" by stating its consideration of the proper age category and explaining its decision. *See Cox*, 2023 WL 5938078, *13; *Malgorzata K.*, 2022 WL 2257122, *3; *Jackson*, 2022 WL 226009, *3; HALLEX I-2-2-42(C)(5). Again, Defendant does not argue otherwise and, while there are broadly applicable factual scenarios and some disagreements in the case law, the authorities show the time at issue, 6 months and 26 days, could constitute "a few months" under § 404.1563(b). *See Pelech*, 2016 WL 727208, *7; *Freundt*, 2001 WL 1356146, *19; *Sopko*, 2013 WL 5497276, *11. Without a brightline rule or the ALJ's consideration of the issue, the Court will not split hairs over differences between 4, 5, or 6 months and 8, 9, 12, or 26 days. As noted above, the ALJ has discretion "to be 'generous or exacting' when considering a borderline age situation," so 6 months and 26 days could conceivably equate to "a few months." *See Jackson*, 2022 WL 226009. *3, 4; *Flores*, 2015 WL 518933, *10; *see also Figueroa*, 848 F. Supp. 2d at 900 ("[I]t would appear to be impossible to determine whether there had even been the required exercise of discretion—assuming that determining which age category a claimant should be placed is a discretionary matter rather than one requiring factual findings to be made—the ALJ would have abused that discretion by failing to exercise it.").

Second, while Defendant seeks to shift the blame to Plaintiff for the alleged failure

to allege harm, the Court finds it cannot adequately review the older age issue or the relevant evidence, at first glance, without consideration by the ALJ. As the authorities note, a meaningful review of the age category issue is difficult, if not impossible, if the ALJ did not indicate its consideration of or explain its decision on the issue. *See Cox*, 2023 WL 5938078, *12-13 (remanding to the agency for the ALJ to analyze the borderline age issue and explain the evidence considered when making the age category determination, where the ALJ did not state whether the borderline age rule was considered, did not indicate what factors were used to determine whether the rule applied, and in the absence of that information it was impossible for the court to conduct a meaningful review of the age category determination); *Figueroa*, 848 F. Supp. 2d at 899-900 (same); *Malgorzata K.*, 2022 WL 2257122, *3-4 (same); *Pelech*, 2016 WL 727208, *7-8 (agreeing with the other courts in Illinois that more was required of the ALJ, where the ALJ failed to build a logical bridge between the evidence and conclusions by not indicating whether the plaintiff's approaching 50th birthday presented a borderline age situation, whether the plaintiff's chronological age was applied in a mechanical fashion without further thought, whether the ALJ deemed the plaintiff's age insufficiently close to 50 years old to trigger a borderline situation analysis and the basis for such a determination, or why the plaintiff's chronological age was chosen if, in fact, the ALJ found there was a borderline situation).

In any event, Defendant generally bears the burden of proof at step 5 and Plaintiff, who could not perform past relevant work and was without transferable skills despite 12 years of education, alleged applying the older age category would result in disability at step 5. *See Young*, 362 F.3d at 1000; (Docs. 10-2, pgs. 64-65; 20, pg. 4). Notable, too, is the

fact that Plaintiff, upon reaching 55 years-of-age in April 2020, was found to be disabled for purposes of SSI. (Docs. 20, pgs. 3-4; 27, pg. 2 n. 2). In short, the Court finds the ALJ should have indicated and explained its consideration of a "borderline situation" under § 404.1563(b). *See* § 404.1563(b); *Cox*, 2023 WL 5938078, *12; HALLEX I-2-2-42(C)(5)).

As an aside, the Court emphasizes that its review of ALJ decisions is immensely deferential. Therefore, when the agency informs claimants through its regulations and guidance documents that it will consider a particular issue, the Court believes it is important that the issue actually be considered. However, the Court stresses that the ALJ retains its discretion to consider the issue on remand. This Memorandum & Order should not, in any way, be read to suggest a particular outcome on remand is appropriate.

## VI. Conclusion

For these reasons, the Court **REVERSES** the final agency decision and **REMANDS** the case for consideration of whether Plaintiff qualifies for the older age category.

**SO ORDERED.**

Dated: September 26, 2023.

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge